IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHE MOLECULAR SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> CEPHEID, <br><br> Defendant. | No. C -14-3228-EDL <br><br> **ORDER GRANTING MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW OF PATENT-IN-SUIT; GRANTING MOTION TO SEAL** |

On July 16, 2014, Roche Molecular Systems, Inc. ("Roche") filed this patent infringement suit against Cepheid, asserting direct and indirect infringement of U.S. Patent No. 5,643,723 (the "'723 Patent"). On September 15, 2014, Cepheid filed an Answer and Counterclaims. On November 10, 2014, Cepheid submitted a petition to the Patent Trademark Appeals Board PTAB seeking *inter partes* review of the '723 Patent. This Court held a Case Management Conference on November 18, 2014, and thereafter issued a Case Management Order setting dates through trial. Now before the Court is Cepheid's Motion to Stay Litigation Pending *Inter Partes* Review of the Patent-In-Suit. For the following reasons, the motion is GRANTED.

I. BACKGROUND

Roche's patent infringement suit against Cepheid alleges that Cepheid's "Xpert® MTB/RIF Assay" product directly and indirectly infringes Roche's '723 Patent entitled "Detection of a Genetic Locus Encoding Resistance to Rifampin in Microbacterial Cultures and in Clinical Specimens" which relates to methods for detecting the bacterium that causes tuberculosis in humans. Compl. ¶¶ 18, 20-22. The '723 Patent is based on an invention made jointly by scientists working at Roche and Mayo. See Compl. Ex. 1 at 2 (cover page of '723 Patent, listing inventors). While the patent application was pending, Roche's inventor assigned her interest in this invention directly to Roche,

whereas the Mayo inventors (including Dr. David Persing) assigned their interests to Mayo, which in turn conveyed rights to Roche. See Compl. ¶¶ 6, 9; Rabinowitz Decl. Ex. 4; Ex. 5[1]. The assignment executed by Dr. Persing and the other Mayo inventors provides, in pertinent part:

> we have sold, assigned, and transferred, and by these presents do sell, assign and transfer unto said Assignee [Mayo], its successors and assigns, the entire right, title and interest for all countries in and to all inventions and improvements disclosed in the aforesaid application, and in and to the said application . . . [and] all Letters Patent which may be granted therefrom . . . . AND, for the consideration aforesaid, we do hereby agree that we . . . will testify in all legal proceedings and generally do all things which may be necessary or desirable more effectively to secure to and vest in said Assignee, its successors or assigns the entire right, title and interest in and to the said improvements, inventions, applications, Letters Patent, rights, titles, benefits, privileges and advantages hereby sold, assigned and conveyed . . . .

Rabinowitz Decl., Ex. 6 (Assignment dated September 21, 1994) at 1. The patent application on which the assignment was based issued on July 1, 1997 as the '723 Patent.

Dr. Persing left Mayo and thereafter joined Cepheid as a Director in May 2004 and became Executive Vice President and Chief Medical and Technology Officer in 2005. Complaint ¶ 10. While at Cepheid, he has been involved in Cepheid's Xpert® MTB/RIF Assay, though the extent of his involvement is disputed between the parties. Roche contends that Dr. Persing is an assignor-inventor who conveyed his ownership in the application that issued as the '723 Patent and the invention therein to Mayo, and that Cepheid has relied on his knowledge and assistance in developing and commercializing the accused product. As discussed below, Roche argues that Cepheid is barred by assignor estoppel from challenging the validity and enforceability of the '723 Patent.

In 2007, both Roche and co-owner Mayo suggested that Cepheid take a license under the '723 Patent, but Cepheid did not do so. Answer ¶ 107. Cepheid launched its product in the United States in July 2013. See Rabinowitz Decl., Ex. 1 (Cepheid Press Release dated July 25, 2013). The product has been commercialized in Europe since approximately 2009, where it allegedly competes with one of Roche's products. See Answer at ¶ 108; Rabinowitz Decl. Ex. 2 (article describing Roche's Cobas TaqMan MTB Assay and comparing the performance of Roche's and Cepheid's genetic tests).

---

[1] Roche has filed an unopposed motion to seal this document, as well as a declaration from Stephen Rabinowitz stating that the terms of this agreement are sensitive business information which Roche is contractually bound to keep confidential, and that public disclosure could cause harm to Roche or Mayo. See Dkt. # 48. Good cause appearing, the Motion to Seal is GRANTED.

The '723 Patent expired on July 1, 2014 and Roche seeks compensatory damages for past infringement only and does not seek an injunction. Cepheid has responded with an Answer and Counterclaims, denying infringement and asserting unpatentability, invalidity, unenforceability, laches and equitable estoppel defenses and also seeking a declaration that the '723 Patent is invalid, unenforceable and not infringed. On November 10, 2014, Cepheid submitted a petition to the Patent Trademark Appeals Board ("PTAB") seeking *inter partes* review ("IPR") of the '723 Patent. Barker Decl., ¶ 5 and Ex. 1. The IPR Petition challenges the validity of claims 1-13 and 17-20 of the '723 Patent, citing prior art that was not before the Patent Examiner. Id. ¶¶ 6-7. Also on November 10, 2014, Cepheid filed a motion to stay litigation pending IPR. Dkt. # 43.

## II.   LEGAL STANDARD

### A.   Inter Partes Review

IPR is a relatively new procedure that became available in September 2012 as part of the America Invents Act (the "AIA"), 35 U.S.C. § 311-319. Evolutionary Intelligence LLC v. Yelp Inc. ("Yelp"), No. C-13-03587 DMR, 2013 U.S. Dist. LEXIS 178547, at *5-6 (N.D. Cal. Dec. 18, 2013); PersonalWeb Techs., LLC v. Facebook, Inc., No. 5:13-CV-01356-EJD, 2014 U.S. Dist. LEXIS 4095, at *7-8 (N.D. Cal. Jan. 13, 2014). IPR is intended to "offer[] 'a timely, cost-effective alternative to litigation,' designed to produce 'a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs.'" Intellectual Ventures II LLC v. Commerce Bancshares, Inc., No. 2:13-CV-04160-NKL, 2014 U.S. Dist. LEXIS 75907, at *4 (W.D. Mo. June 4, 2014) (quoting Changes to Implement Inter Partes Review Proceedings, 77 Fed. Reg. 48680-01 (Aug. 14, 2012)); PersonalWeb Techs., 2014 U.S. Dist. LEXIS 4095, at *9. The IPR timeline is faster than prior reexamination procedures. Yelp, 2013 U.S. Dist. LEXIS 178547, at *6. The patentee may file an optional response within three months of notice of the filing of an IPR Petition, and then the PTAB has three months to decide whether to institute IPR. 35 U.S.C. §§ 313, 314; 37 C.F.R. § 42.107. The PTAB must complete the IPR within twelve months of its institution, unless there is good cause for an extension of no more than six months. 35 U.S.C. § 316(a)(11). Any appeal of the PTAB ruling is directly to the Federal Circuit without an intervening appeal. 35 U.S.C. § 142.

### B. Standard for Granting a Stay

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." Ethicon, Inc. v. Quigg, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988) (internal citations omitted); see also Fresenius Medical Care Holdings, Inc. v. Baxter Intern, Inc., 2007 WL 1655625 at *2 (N.D. Cal. June 7, 2007) (courts have discretion to stay judicial proceedings pending patent reexamination, but are not required to do so). Courts in this district often grant stays pending this new IPR process in light of the "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." Yelp, 2013 U.S. Dist. LEXIS 178547, at *13 (citation omitted); see also Pi-Net Int'l, Inc. v. Focus Bus. Bank, No. C-12-4958-PSG, 2013 U.S. Dist. LEXIS 118723, at *5-7 (N.D. Cal. Aug. 16, 2013) (expressing skepticism concerning stays for the old reexamination procedure but granting a stay pending IPR); Brixham Solutions v. Juniper Networks, Inc., No. 13-cv-00616-JCS, 2014 U.S. Dist. LEXIS 58770 (N.D. Cal. Apr. 28, 2014, at *6 ("the potential delay associated with *inter partes* review is not significant in comparison to the post-grant review procedures that existed prior to the enactment of the America Invents Act"). One court has stated that "courts routinely grant stays based on the filing of an IPR petition because the high probability that the request will be granted and potential benefits of IPR outweigh the relatively modest delay resulting from the stay if the petition for IPR is denied." Intellectual Ventures, 2014 U.S. Dist. LEXIS 75907, at *12 (footnotes and citations omitted).

To determine whether to stay litigation when a petition for IPR has been filed, courts examine: (1) the stage of the case; (2) whether a stay will simplify the court proceedings; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party. See, e.g., Evolutionary Intelligence, LLC v. Facebook, Inc. ("Facebook"), Nos. C 13-4202 SI, C 13-4204 SI, 2014 U.S. Dist. LEXIS 9149, at *4 (N.D. Cal. Jan. 23, 2014) (citations omitted); Software Rights Archive, LLC v. Facebook, Inc., No. C-12-3970 RMW, 2013 U.S. Dist. LEXIS 133707 at *9 (N.D. Cal. Sept. 17, 2013) (citation omitted); Brixham Solutions Ltd., 2014 U.S. Dist. LEXIS 58770, at *3; Intellectual Ventures, 2014 U.S. Dist. LEXIS 75907, at *6-7; Cypress Semiconductor Corp. v. GSI Technology, Inc., No. 13-CV-02013-JST, 2014 WL 5021100 at *2 (N.D.

Cal. Oct. 7, 2014).

## III.  DISCUSSION

### A.  Stage of the Case

There is no dispute that this case is in the very early stages of litigation. The complaint was filed less than six months ago, the initial case management conference was held less than two months ago, infringement contentions were to have been served on December 2, 2014, and no discovery has taken place. Several cases in this district have stayed cases in the very early stages such as this one. See, e.g., Facebook, 2014 U.S. Dist. LEXIS 9149, at *5 ("courts in this district strongly favor granting stays" pending IPR when there has been no material progress in the litigation); Yelp, 2013 U.S. Dist. LEXIS 178547, at *13-14 (granting stay of case "in its infancy" though plaintiff had produced documents and served infringement contentions); Brixham Solutions, 2014 U.S. Dist. LEXIS 58770, at *2, *5-6 ("relatively early stage" favored stay where litigation had been pending for over a year, claim construction briefs submitted, and some discovery conducted).

Roche cites one case holding that the early stage of litigation favored *denying* a stay because the PTO decision would likely issue before summary judgment, and therefore the Court and parties could incorporate the PTO's reasoning and conclusions into the summary judgment process. See Everlight Electronics Co., Ltd. v. Nichia Corp., C.A. No. 12-CV-11758, 2013 WL 1821512, at *10 (E.D. Mich. Apr. 30, 2013). However, Everlight was farther along in the litigation process than this case, and the court there also held that a stay would be unreasonably prejudicial to one side. The infancy of this case weighs in favor of a stay.

### B.  Simplification of Court Proceedings

Cepheid argues that its IPR request has the potential to moot this litigation if the PTAB cancels all of the challenged claims. Alternatively, Cepheid contends that even if all of the challenged claims are not cancelled, this litigation will still be simplified because it will be estopped from re-litigating the invalidity of any remaining claims that were addressed in the IPR. See 35 U.S.C. § 315(c) (party requesting IPR estopped from asserting "in any civil action . . . the invalidity of any claim finally determined to be valid and patentable on any ground which the third-party requester raised or could have raised during the inter partes reexamination proceedings"); Yelp, 2013

5

U.S. Dist. LEXIS 178547, at *16 (stay not contingent on the IPR resolving every claim and issue in the litigation; question is whether it will aid the court or streamline litigation). Roche counters that Cepheid has not challenged claim 21 in the IPR although it is asserted in this litigation, so even Cepheid's complete success in the IPR would not moot this litigation. See Everlight, 2013 WL 1821512, at *10 (denying stay in part because not all claims were subject to IPR). Cepheid responds that Roche has no basis to assert claim 21 because its product does not infringe this claim and it will be entitled to summary judgment with respect to this claim. Whether or not one claim remains in this litigation after the IPR concludes, the potentially significant reduction of claims and issues to be litigated favors a stay.

The early status of the IPR proceeding does not change this result. Several cases have granted a stay even where, as here, the PTAB has not yet decided whether to institute an IPR. See, e.g. Brixham Solutions, 2014 U.S. Dist. LEXIS 58770, at *5-6 ("Given the high rate at which the PTO grants petitions for *inter partes* review, even a petition requesting review is likely to simplify the issues in the case, at least where, as here, the petition contains no obvious deficiencies."); Yelp, 2013 U.S. Dist. LEXIS 178547, at *22; Intellectual Ventures, 2014 U.S. Dist. LEXIS 75907, at *12; Facebook, 2014 U.S. Dist. LEXIS 9149, at *9. However, at least one case from this district has held that the fact that the PTAB has not made a decision on whether to conduct an IPR weighs against a stay. See, e.g., TPK Touch Solutions, Inc. v. Wintek Electro-Optics, No. 13-CV-02218-JST, 2013 WL 6021324 (N.D. Cal. Nov. 13, 2013) (noting that, "While an IPR proceeding might simplify a case once IPR has been granted," it is too early to draw that conclusion prior to a grant of review).

Roche relies on statistics which it interprets as showing that the PTAB has declined to institute an IPR in 32% of petitions and 33% of the claims at issue in those petitions that have been "terminated to date." See Rabinowitz Decl. Ex. 8 (chart of IPR petitions terminated as of 10/16/14). As to those claims subjected to IPR, approximately 50% were deemed patentable in petitions that were terminated. Id. According to Roche, this means that approximately 66% of the claims challenged in an IPR litigated to termination have been affirmed. Id. Cepheid responds that Roche's data is limited to IPR petitions that have been "terminated" for any number of reasons (including settlement) and excludes pending IPR petitions. Cepheid's broader data shows that approximately

6

75-87% of IRP petitions have been selected for review since 2013. See Barker Reply Decl. ¶ 11, Ex. 10 at 4. Further, it appears that the PTAB has found at least one claim unpatentable in approximately 84% of final written decisions. See Reply at 14 (chart). Overall, the data reflects a relatively high probability that at least some of the claims at issue in this litigation will be selected for IPR and eventually cancelled. Accordingly, a stay has the potential to greatly simplify these Court proceedings, weighing in favor of a stay.

### C.  Undue Prejudice or Tactical Disadvantage

Cepheid argues that Roche will suffer no prejudice or tactical disadvantage because the '723 Patent is expired and it seeks only past damages, so there can be no additional damage from a stay of litigation. Cepheid also contends that Roche is essentially a non-practicing entity because it currently does not sell any micobacterium tuberculosis test in the United States, and instead it sells a test outside the United States directed to a different gene than the gene that is the focus of the '723 Patent. See Barker Decl. ¶ 8-9, Exs. 2-5. Some cases have found that there was no undue prejudice to a patent infringement claimant under similar circumstances. See Yelp, 2013 U.S. Dist. LEXIS 178547, at *25-28; Brixham Solutions, 2014 U.S. Dist. LEXIS 58770, at *6 (non-practicing entity cannot demonstrate irreparable harm from a stay). Roche does not seriously dispute these points relating to financial prejudice, instead arguing that it will suffer prejudice due to delay and tactical disadvantage.

#### 1.  Delay

Cepheid contends that Roche unduly delayed in bringing this lawsuit because it publicly disclosed its method of detecting micobacterium tuberculosis in 2001 and Roche should have been aware of Cepheid's method at that time. See Barker Decl. ¶ 11. Further, Cepheid claims that in 2007, Mayo (then co-owner of the '723 Patent) asserted that Cepheid need a license to the '723 Patent, but no litigation commenced despite Cepheid's refusal. See Answer at ¶¶ 104, 107. Cepheid reasons that Mayo's actions with respect to Cepheid at that time should be imputed to Roche as co-owner and transferee, and since Roche waited so long to file suit it cannot now claim prejudice from an additional delay. Roche responds that it would have been premature to pursue litigation earlier because Cepheid had not commercialized its product in 2007, and it was subject to an FDA approval

exemption until 2013. Given the arguments on both sides, the Court is not persuaded that any delay in filing this lawsuit weighs for or against a stay.

Roche argues generally that necessary evidence and testimony on issues not before the PTAB may be lost due to the passage of time if a stay is imposed, but does not point to any specific circumstances, such as a seriously ill key witness, that threaten the loss of evidence beyond the potential inherent in any stay. It is true that, even under the new faster IPR process, a PTAB review and subsequent appeal could take years. Roche has three months to respond to Cepheid's request for IPR, and then the PTAB has another three months to decide whether to institute an IPR, so a decision on whether an IPR will be conducted, and on which claims, is unlikely to issue before May 2015. PTAB review can then take up to 18 months, with additional time for any resulting appeals to the Federal Circuit, and possibly even the Supreme Court (notwithstanding the recent increase in its patent docket, still a rarity). However, without a more particularized showing of harm, this type of harm is inherent in any case delay and does not support the denial of a stay. See PersonalWeb Techs., LLC v. Apple, Inc., 2014 U.S. Dist. LEXIS 136813, at *15 (N.D.Cal. Sept. 24, 2014).

### 2. Assignor Estoppel

Finally, Roche argues that it will be tactically disadvantaged by a stay because it will be unable to promptly take discovery on and litigate its defense that "an assignor and parties in privity with the assignor are estopped or barred from asserting invalidity defenses." Pandrol USA, LP v. Airboss Ry. Prods., Inc., 424 F.3d 1161, 1167 (Fed. Cir. 2005); see also Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1224 (Fed. Cir. 1988). Under this theory, an assignor-inventor is in privity with a defendant corporation that has "availed [itself] of [the assignor-inventor's] knowledge and assistance to conduct infringement." Shamrock Techs., Inc. v. Med. Sterilization, Inc., 903 F.2d 789, 794 (Fed. Cir. 1990). After the Supreme Court's abolition of the similar doctrine of licencee estoppel in Lear, Inc. v. Adkins, 395 U.S. 653 (1969), the Federal Circuit questioned the viability of assignor estoppel but ultimately held that it is an equitable doctrine that may still be applied to prevent one who has assigned the rights to a patent (or patent application) from later contending that what was assigned is a nullity. See Diamond Scientific Co. v. Ambico, Inc., 848 F.2d 1220, 1223-25 (Fed. Cir. 1988); but see Coastal Dynamics Corp. v. Symbolic Displays, Inc., 469 F.2d 79, 79 (9th Cir. 1972)

8

(refusing to remand for a express ruling on assignor estoppel because unconvinced that assignor estoppel requires different rule from that set forth in Lear regarding licensee estoppel and lower court did rule on licensee estoppel). Diamond Scientific explained that "the primary consideration in now applying the doctrine is the measure of unfairness and injustice that would be suffered by the assignee if the assignor were allowed to raise defenses of patent invalidity. Our analysis must be concerned mainly with the balance of equities between the parties." Id. at 1225. In subsequent cases, the Federal Circuit and lower courts in this district and others have not hesitated to apply the doctrine in appropriate cases. See, e.g., Carroll Touch, Inc. v. Electro Mechanical Sys., 15 F.3d 1573, 1579 (Fed. Cir.1993) ("A determination whether assignor estoppel applies in a particular case requires a balancing of the equities between the parties."); Brilliant Instruments, Inc. v. GuideTech, Inc., No. C 09-5517 CW, 2014 WL 576244, at *3 (N.D. Cal. Feb. 12, 2014).

Roche contends that assignor estoppel applies here given Dr. Persing's work on the invention that became the '723 Patent, his assignment of rights and covenant to "generally do all things which may be necessary or desirable more effectively to secure to and vest in said Assignee, its successors or assigns the entire right, title and interest in and to the said improvements, inventions . . .," his employment with Cepheid, and his involvement with the allegedly infringing product. See Applied Materials, Inc. v. Negevtech, Inc., No. C 04-03656-SI, 2005 WL 1656894 (N.D.Cal. July 14, 2005) at *2-5 (inventors who assigned rights in pending patent application and their current employers precluded under assignor estoppel from challenging patent validity; stay pending re-examination denied due to stage of case and summary judgment granted). In Diamond Scientific, 848 F.2d at 1220-25, the assignor of an interest in a patent application received valuable consideration, executed an oath regarding the patentability of the invention, and participated in the patent application process. He then left his employment with the assignee/plaintiff and formed a new company where he developed and sold the accused product. The Federal Circuit held that, under these facts, it would be unfair to allow the assignor to profit both by his initial assignment of the patent applications and by his later attack on the value of the very subjects of his earlier assignment, whereas the assignee gave value for the rights to the inventions only to have the assignor later deprive it of the worth of those assigned rights. Id.

9

Cepheid counters that assignor estoppel is an equitable doctrine not applied in all cases, and should not be applied here. Cepheid distinguishes this case from Diamond Scientific because Dr. Persing assigned his rights in the patent application in 1994, left employment with Mayo in 1998, and worked for an unrelated company until 2004 when he joined Cepheid. It argues that Cepheid already had an operational version of what became the infringing product as early as 2001 and presented the technology at an industry conference in 2004 before Dr. Persing joined Cepheid. The timing of Cepheid's product development and Dr. Persing's involvement in it is a factual question upon which additional evidence and argument are needed prior to any assessment of the merits. Cepheid also argues that it would be inequitable to apply assignor estoppel to its defense that the '723 patent contains claims that are not patent-eligible in light of the Supreme Court's recent significant decision that a naturally occurring DNA segment is a product of nature and not patentable. See Ass'n for Molecular Pathology v. Myriad Genetics, Inc., 569 U.S. ___, 133 S. Ct. 2107, 2111 (2013). Cepheid reasons that even if Dr. Persing's 1994 assignment is interpreted as a representation that his invention was patent-eligible at the time, that representation cannot reasonably prohibit him and those in privity with him 20 years later from arguing invalidity in light of an intervening change in law. Under different circumstances, post-assignment events have been cited as precluding an assignor estoppel defense where the equities require it, and Cepheid may ultimately demonstrate that it would be inequitable to preclude it from arguing unpatentable subject matter based on Myriad due to an assignment made years earlier. See Shamrock Techs, Inc. v. Medical Sterilization, Inc., 903 F.2d 789, 795-96 (Fed. Cir. 1990) (stating that, "in a proper case general principles of equity may preclude use of assignor estoppel to bar a viable equitable defense arising from post-assignment events," but holding that the post-assignment conduct alleged -- malfeasance during PTAB appeal -- did not support an inequitable conduct argument so assignor estoppel applied).

There appear to be reasonable arguments on both sides of the assignor estoppel issue. The Court has therefore considered the possibility of granting a partial stay while allowing this one issue to proceed in litigation. However, when the Court raised this alternative during oral argument, the parties' responses demonstrated that proceeding in this manner would not streamline this litigation

and could actually thwart the goals of IPR to provide a more efficient and cost-effective procedure by which to review the validity of patent claims.

The PTAB has held in two recent decisions that assignor estoppel may not "be raised successfully as a defense in an *inter partes* review." See Redline Detection, LLC v. Star Envirotech, Inc., No. IPR 2013-00106, 2013 WL 5970197, at *2 (PTAB Aug. 27, 2013); Athena Automation Ltd. v. Husky Injection Molding Sys. Ltd., No. IPR 2013-00290, 2013 WL 8595976 (PTAB Oct. 25, 2013). Roche disputes the PTAB's interpretation of the AIA to preclude this defense in an IPR. Roche argues that it will be tactically disadvantaged if the case is stayed in favor of IPR because it will be prevented from litigating its assignor estoppel theory in this case first, and it will be unable to develop a record on the issue of assignor estoppel to present to the Federal Circuit or the Supreme Court on review of any unfavorable PTAB decision following the IPR in light of the limited discovery allowed in IPR proceedings. See 35 U.S.C. § 316(a) (limiting discovery available in IPR proceedings). This argument rests on Roche's hope that the Federal Circuit will overturn the PTAB's decisions not to consider assignor estoppel and will ultimately remand the IPR decision to the PTAB to reconsider it in light of assignor estoppel evidence. However, speculation is not a basis for denying a stay. See Advanced Analogic Techs., Inc. v. Kinetic Techs., Inc., 2009 U.S. Dist. LEXIS 122229, at *3-4, n.2 (N.D. Cal. Dec. 15, 2009) (staying litigation despite existing issue of assignor estoppel); Hewlett-Packard Co. v. Acuson Corp., 1993 U.S. Dist. LEXIS 6449, at *10-13 (N.D. Cal. May 5, 1993) (staying litigation because assignor estoppel might not apply and "the orderly cause of justice measured in terms of the simplification of issues, proof, and questions of law which are expected to result from the stay" outweighed prejudice to patentee). Furthermore, Roche cannot reasonably claim to be "tactically disadvantaged" in *this* litigation by a statutory framework which limits the issues authorized by Congress to be raised in IPR proceedings or the discovery allowed to be taken in such proceedings.

Though not couched in these terms, Roche's argument in favor of allowing assignor estoppel to be litigated now boils down to a fear that it will be tactically disadvantaged *in the IPR and related appeals* if it is not allowed the benefit of this Court's more liberal discovery procedures, with a potential Court ruling on assignor estoppel while the IPR proceeding is pending, but at least use of discovery in the PTAB proceedings if and when the Federal Circuit (or Supreme Court) forces the

PTAB to recognize an assignor estoppel defense. Roche conceded as much during oral argument when it stated that, if the Court allows litigation to proceed on the limited issue of assignor estoppel, the two parallel proceedings will become a "footrace" -- the opposite of what the streamlined IPR proceedings combined with litigation stays were designed to achieve. See Advanced Analogic Techs., Inc. v. Kinetic Techs., Inc., No. C-09-1360 MMC, 2009 U.S. Dist. LEXIS 1222229, at *6 (N.D.Cal. Dec. 15, 2009) (refusing to allow discovery on assignor estoppel despite a stay pending reexamination as this would impede Congressional intent for reexamination to be a less costly, more efficient alternative to litigation). Indeed, at oral argument, Roche raised for the first time its desire to also pursue discovery of the Georgia-Pacific factors for use in the IPR where such discovery is not available. See Georgia-Pacific v. U.S. Plywood Corp., 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (listing factors relevant to determining a reasonably royalty). In effect, it seeks to convert the liberal discovery allowed under the Federal Rules of Civil Procedure into an adjunct of the PTAB proceedings. However, the federal courts exercise their inherent authority to manage their own cases, not the PTAB's.

At oral argument, Roche cited a Delaware minute order to support its position that it should be allowed to take discovery in this case to be proffered to the PTAB. Roche thereafter submitted a copy of the docket in Pregis Innovative Packaging, Inc. v. Sealed Air Corp., No. 1:13-cv-01084-LPS (D.Del.) and pointed to a docket entry from December 16, 2013. The text of that docket entry provides:

> The Court agrees with Plaintiff that there is no reason for this Court to place any restriction on what material the USPTO/PTAB may wish to consider in connection with IPR proceedings pending before it. The intent and effect of the Protective Order the Court will enter is to permit any party to proffer to the PTAB any discovery material from the instant litigation, but without in any way affecting the PTABs ability to interpret and enforce its own rules and procedures. As Plaintiff correctly states, the Protective Order entered in this case will have no bearing or effect on any such putative future objections to use of discovery material in the IPR proceedings and will also have no bearing or effect on what evidence the USPTO may or may not choose to receive during the trial of any IPR proceeding that may occur.

This minute order does little to support Roche's position. There was no pending request for a stay at the time the minute order was issued, so the court was not presented with the question of whether to allow certain discovery despite a stay pending IPR, or whether a party can be viewed as tactically

12

disadvantaged if it is not allowed to take civil discovery on an issue not currently allowed before the PTAB but which the party wishes to dispute there. While civil discovery conducted for litigation purposes may also be used in an IPR to the extent that the PTAB is willing to consider it, that does not confer on any party a right to develop discovery in federal court to be used in another forum. Roche will not be tactically disadvantaged here by a stay of this litigation pending IPR, and it will be afforded the opportunity to litigate any remaining issues when the stay is lifted.

This case is hereby STAYED. The parties shall file a joint status update by no later than June 1, 2015 informing the Court of the status of the proceedings before the PTAB.

**IT IS SO ORDERED.**

Dated: January 7, 2015

ELIZABETH D. LAPORTE
United States Magistrate Judge